# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTOPHER LEE RENFREE, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:16-CV-271-TLS |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Christopher Lee Renfree, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. In September of 2014, an administrative law judge (ALJ) held a hearing on the Plaintiff's application. On December 18, 2014, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. On June 2, 2016, the Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## EVIDENCE OF RECORD

The Plaintiff was born on August 23, 1964. (R. at 155, ECF No. 10.) He has at least a high school education. (*Id.*) The Plaintiff has a work history that includes working as a groundskeeper, bar back, and warehouse worker. (R. at 155.)

In the present case, the Plaintiff claims to have become disabled on July 9, 2008, due to multiple physical and mental impairments, including a history of bilateral leg fractures due to a motor vehicle accident in 1988; post-traumatic arthritis in the left knee, right ankle, and foot; contracture and/or stress fracture; degenerative disc disease (spondylosis); hepatitis C; hyperlipidemia; major depressive disorder; dysthymia secondary to physical problems; a history of polysubstance abuse; chronic pain syndrome; polyarthralgia; thoracolumbar scoliosis; a right hip/proximal femur bone formation problem; and foot problems including verruca plantaris, fasciitis, tendonitis, metatarsalgia, and hammertoe. (Pl. Br. 4–5, ECF No. 17.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff did not engaged in SGA since the alleged onset of disability and thus, the Plaintiff satisfied the step one inquiry. (R. at 146.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the

ALJ determined that the Plaintiff's impairments, including a "history of bilateral leg fractures due to [a] remote motor vehicle accident in 1988, posttraumatic arthritis in [the] left knee, right ankle/foot arthritis/contracture/stress fracture/status post-crash [sic] injury, degenerative disc disease/spondylosis" were severe impairments because they significantly limited his ability to perform basic work activities. (*Id.*) The ALJ did not find that the Plaintiff's diagnoses of major depressive disorder and dysthymia secondary to physical problems were severe. (*Id.*). Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform light work, as defined by § 404.1567(b). (R. at 147.) However, the ALJ held that the Plaintiff is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (*Id.*) Additionally, he requires a sit/stand option, which will allow him to alternate between sitting and standing up to every 30 minutes, if needed, but will not render him off task. (*Id.*) The Plaintiff can never climb ladders, ropes, or scaffolds, should

3

avoid concentrated exposure to extreme cold and vibration, and avoid even moderate exposure to hazards such as moving machinery, unprotected heights, and slippery, uneven, or moving surfaces. (*Id.*)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (R. at 148). The ALJ examined both the Plaintiff's physical impairments and his mental impairments.

**A.      Physical Impairments**

The ALJ began by examining the Plaintiff's claim that he is disabled due to his left knee and right foot, which cause him pain and result in an irregular walking pattern. The ALJ noted that the Plaintiff's problems began with an automobile accident in 1988, though in 2007, a CT scan revealed healed fractures. (R. at 148–49.) The ALJ also noted that though the Plaintiff claims that the primary issue is pain as a result of the injury, the Plaintiff nevertheless continues to walk for long periods of time, has had no diagnosis of decreased muscle strength, responded well to pain medications, returned to work after sustaining the injuries, takes care of his elderly mother (including cooking, pushing her in a wheelchair, and performing household chores), is able to travel out of town for periods of time while on pain medication, has failed to follow up with a foot surgeon (stating that he needs to care for his mother and cannot be off his feet for that long), and is able to perform daily activities. (R. at 151–52.) Accordingly, the ALJ found the Plaintiff not fully credible, (R. at 151.), also holding that he "does not find the record supports the intensity of pain reported by the claimant." (R. at 152.)

In reaching his conclusion, the ALJ detailed the Plaintiff's October 2010 initial consultation by Dr. Winifred Lau, M.D., who referred the Plaintiff for pain management treatment resulting from chronic pain syndrome. (R. at 149.) However, the ALJ noted that less than a month later, the Plaintiff reported to Dr. Lau requesting new inserts for his shoes because he had been walking frequently. (*Id.*). The ALJ additionally reviewed the Plaintiff's treatment by Dr. Patricia Stewart, M.D., beginning in 2011, who determined that the Plaintiff showed signs of sclerosis, but otherwise had no major problems. (*Id.*) Upon further examination by Dr. Nicole Arcand, M.D., the Plaintiff appeared to have mild issues, but no major movement concerns. (*Id.*) Though in 2012 the Plaintiff was found to have a lesion and pain in his foot, an abnormal gait, and minimal swelling (R. at 150–51), the ALJ detailed the 2013 examination by Karim Moshref, P.C., who determined that the Plaintiff's physical examination was generally normal. (R. at 151.) The ALJ gave little weight to Jenna Purdell, who opined that the Plaintiff would be suited for a job that does not require physical labor or a lot of walking, because the ALJ held it was unknown in what capacity Purdell treated the Plaintiff. (R. at 153.) Additionally, the ALJ determined that he likely incorporated Purdell's opinion when holding that the Plaintiff is limited to light work with a sit/stand option. (*Id.*) The ALJ also gave little weight to the state agency medical consultants from the Plaintiff's prior intimal application because the doctors' opinions were not based on a complete medical record. (R. at 155.) Nevertheless, the ALJ held that he generally accounted for their recommendations. (*Id.*) The ALJ gave great weight to the opinion of M. Brill, M.D., a state agency medical consultant, who opined regarding the limitations of the Plaintiff, which the ALJ ultimately incorporated in the RFC determination. (R. at 154.)

B.  **Mental Impairments**

Because the Plaintiff had no limitations in his activities of daily living, mild limitations in social functioning, no limitations in concentration, persistence, or pace, and no episodes of decomposition, the ALJ determined that the Plaintiff's major depressive disorder and dysthymia were not severe. (R. at 146.) Moreover, the ALJ noted that the Plaintiff did not seek or receive ongoing treatment for these mental impairments, and with medication, the Plaintiff's symptoms improved. (R. at 146–47.)

When determining the Plaintiff's RFC, the ALJ continued to review the Plaintiff's mental impairments.[1] The ALJ found that in 2006, the Plaintiff was diagnosed with major depressive disorder, (R. at 148), but he had not sought treatment upon his diagnosis. (R. at 149). In October 2010, the Plaintiff was seen at Sound Community Services and was diagnosed with depressive disorder, and the diagnosis was changed to major depressive disorder a month later. (*Id.*) The Plaintiff subsequently began treatment by Rama Goyal, M.D., which he continued for one year before moving out of state. (R. at 150.) The ALJ ultimately gave no weight to Dr. Goyal's opinion that the Plaintiff would have an obvious to slight problem in areas of social interaction and performing basic work activities because the ALJ determined that the opinion is vague as it is unknown what an "obvious to slight" problem is. (R. at 153.) Moreover, the ALJ held that Dr. Goyal's evaluation was a result of answers provided by the Plaintiff and thus, the evaluation was a subjective report by the Plaintiff. (*Id.*)

In April 2011, the ALJ noted that Sound Community Services determined that the Plaintiff had normal mental status, and Dr. Lau's notes indicated that the Plaintiff had no

---

[1] "In making a proper RFC determination, the ALJ must consider . . . the combined effect of all of a claimant's impairments, both severe and non-severe." *Keenan v. Colvin*, 2016 WL 4735157, at * 8 (N.D. Ind. Sept. 12, 2016); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010). Here, the ALJ correctly continued to review the Plaintiff's mental impairments when developing the RFC.

symptoms of depression (R. at 150.) The Plaintiff was subsequently seen by Dr. Yunus Pothiawala, M.D., and the ALJ found that though Dr. Pothiawala diagnosed the Plaintiff with dysthymia, the Plaintiff had an appropriate and cooperative affect and engaged in regular activities of daily living including normal socialization. (*Id.*) In March 2013, the Plaintiff was seen by Dr. Wayne Von Barger, PhD, who found that the Plaintiff reported taking care of his mother, engaging in daily activities, and did not have any difficulties with recall or concentration. (R. at 151.) In November 2013, the Plaintiff was prescribed Elavil for depression, though the ALJ noted that the Plaintiff presented in a cooperative and pleasant manner. (*Id.*)

The ALJ gave great weight to some of the state agency psychological consultants, who opined that the Plaintiff had only mild limitations in social functioning, but no limitations in his daily activity, because the ALJ concurred that the Plaintiff had not continued to follow up with a therapist or psychologist and did not report ongoing limitations due to mental impairments. (R. at 154.) However, the ALJ gave little weight to the state agency psychological consultants who opined that the Plaintiff had mild limitations in all areas of functioning, specifically noting that these consultants failed to account for the fact that the Plaintiff completed activities of daily living and assisted his mother. (R. at 154–55.) The ALJ also gave little weight to the state agency medical consultants from the Plaintiff's prior applications, holding that these consultants did not have an opportunity to examine the entire medical record. (R. at 155.)

The ALJ further examined the Plaintiff's Global Assessment Functioning (GAF) scores, which ranged from 36 to 55, and ultimately gave them no weight. (R. at 153–54.) In 2009, the Plaintiff had a GAF Score of 37, indicating severe impairments. (R. at 149.) The ALJ determined that this score and the Plaintiff's previous score of 36 were not reliable because they were more than five years old (at the time of the ALJ's decision), the Plaintiff's mental issues appeared to

7

stem from an ongoing court case at the time, and the Plaintiff presented with a normal mental status examination. (R. at 153.) In 2010, Dr. Goyal gave the Plaintiff a GAF score of 41, also indicating a major impairment in functioning. (R. at 149, 153.) The ALJ held that the record did not support this score because the Plaintiff had a stable mood, no delusions, and the score was more than two years old. (R. at 153.) In 2013, the Plaintiff's GAF score was 55, indicating moderate limitations; however, the ALJ again noted that the Plaintiff appeared cooperative and had an intact memory. (R. at 151, 153–54.)

Additionally, the ALJ analyzed the Plaintiff's polysubstance abuse. The ALJ noted that the Plaintiff presented to the emergency room on multiple occasions requesting detox and was diagnosed on numerous occasions with alcohol dependence. (R. at 148–49.) Though the Plaintiff entered treatment for opiate and alcohol detox, (*id.*), the ALJ found that "the claimant has been noted to leave against medical advice and cancel appointments." (R. at 152.) Moreover, the Plaintiff's drug and alcohol abuse did not result in a period of decomposition. (R. at 146.) Accordingly, the ALJ determined "that the record evidence fails to demonstrate that the claimant's history of alcohol abuse constitutes a contributing factor material to the determination of disability." (R. at 152–53.) Moreover, the ALJ found that the Plaintiff's testimony regarding his pain levels and dependence issues was vague and evasive because the Plaintiff did not clarify how long he could stand or what "overdoing it" was. (R. at 152.)

At the final step of the evaluation, the ALJ determined that the Plaintiff cannot perform any past relevant work. (R. at 155.) However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there are a significant number of jobs in the national

8

economy that the Plaintiff could perform. (*Id.*) These jobs include small products assembler, cashier, and electrical accessories assembler. (R. at 156.)

### STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must

explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff presents the following faults with the ALJ's decision: the ALJ improperly over emphasized the Plaintiff's daily activities, the ALJ did not properly consider the impact of the Plaintiff's inability to afford treatment, and the ALJ improperly identified and weighted the opinion of the Plaintiff's treating psychiatrist.

**A.     The Plaintiff's Daily Activities**

The Plaintiff finds fault with the ALJ's analysis equating the Plaintiff's daily activities, including care for his elderly mother, with his ability to do work. Specifically, the ALJ held:

> Additionally, the claimant provides care for his elderly mother, including cooking for [her,] putting on her shoes, pushing her in her wheelchair, and performing household chores. These are not activities of someone who would be unable to perform light work with a sit/stand option.

(R. at 152.)

The Seventh Circuit has acknowledged that care for the family does not automatically equate to the ability to work. In *Beardsley v. Colvin*, the Seventh Circuit held:

> As we have said, it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member.

758 F.3d 834, 838 (7th Cir. 2014); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."). This is because "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer. The failure to recognize these differences is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Gentle*, 430 F.3d at 867 (holding that a Plaintiff may have to take care of family or else abandon them to foster care and thus, household work is not equitable to employment).

Accordingly, the ALJ may review the Plaintiff's daily activities, including his undertaking of household chores and taking care of his mother, when analyzing his symptoms and severity of his alleged disability. However, the ALJ should not equate the Plaintiff's ability to engage in household chores and care for his mother with the ability to take on a full time job. For the ALJ to have made this later determination was error and constitutes grounds for reversal.

**B    The Plaintiff's Inability to Afford Treatment**

The Plaintiff also argues that the ALJ did not properly analyze why the Plaintiff was unable to afford to follow through with foot surgery.

In his analysis of why the Plaintiff was not credible, the ALJ held that the Plaintiff "has been referred for foot surgery, however he has failed to follow up with a foot surgeon, stating that he cares for his mother and is unable to be off his feet for that long." (R. at 152.) According

11

to the Plaintiff, the ALJ overlooked in his decision that the Plaintiff's health insurance at the time was the type of Medicaid that required a spend down, and thus, the Plaintiff was unable to obtain the surgery until the spend down had been exhausted. (*see* R. at 877 ("chronic leg pain in his legs—in another spend down right now—can't have surgery until the spend down is done."), 878 ("awaiting surgery—on a spend down now.").) Therefore, the Plaintiff argues that the ALJ improperly held the Plaintiff's "failure" to obtain surgery against his credibility. (R. at 152.)

The Court affirms that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citation omitted). "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking [or] receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013).

In this case, though the ALJ noted that the Plaintiff's complaints of foot pain were both vague and unsupported by the record, (R. at 152), the Court remands this case to the ALJ to the extent that the ALJ predicated her adverse credibility determination on the Plaintiff's failure to obtain surgical treatment without analyzing whether the Plaintiff's failure to obtain an expensive surgery was due to factors such as his economic constraints.

C.     **The Plaintiff's Treating Psychiatrist**

Finally, the Plaintiff argues that the ALJ erred when giving little weight to Dr. Goyal's opinion. First, the Plaintiff points out that the ALJ did not engage in a discussion concerning the length of the treating relationship, frequency of examination, nature of the treatment relationship, and the extent of the treatment relationship. *see* 20 C.F.R. § 404.1527. Moreover, the Plaintiff

12

argues that the ALJ's primary reason for rejecting Dr. Goyal's opinion is because Dr. Goyal circled "obvious problem" with one area of social functioning on the Connecticut Department of Disability Determination Services (DDDS) Mental Impairment Questionnaire, and "slight problem" with another area of social functioning. (R. at 910.) The ALJ held, "it is unknown what a slight problem or obvious problem is." (R. at 153.) The Plaintiff argues that Dr. Goyal had to circle one of these options on the DDDS Questionnaire and thus, it is incorrect for the ALJ to reject Dr. Goyal's opinions due to his filling out of a pre-printed form.

The Court finds that the ALJ was incorrect in discrediting Dr. Goyal's opinion on the basis that he circled "obvious" and "slight" problem on a preprinted social security form. That these terms are vague to the ALJ is a complaint by the ALJ to the makers of the questionnaire— the Connecticut DDDS. It should not be held against Dr. Goyal's opinion. However, the ALJ provided another reason why he discredited Dr. Goyal's opinions: "These opinions are not based on observations but are rather based on the claimant's subjective reports." (R. at 153.) In fact, Dr. Goyal himself wrote: "All answers were provided by the [patient] to above questions." (R. at 910.) Dr. Goyal did not write anything else in the comments section, including why he marked "obvious" and "slight" problems. Accordingly, the ALJ had an appropriate basis to provide controlling weight to Dr. Goyal's opinion, and the Court declines to remand on this point.

However, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561 (citation omitted). It may very well be that "many of these considerations favor crediting [Dr. Goyal's] assessment: [Dr. Goyal] is a psychiatrist (not a psychologist), []he saw [the Plaintiff] on

13

a monthly basis, and the treatment relationship lasted for over a year. It is not apparent that the ALJ considered any of these factors. Based on these shortcomings," the Court concludes that the ALJ's consideration of Dr. Goyal's evaluation is unsatisfactory and requires remand. *Scott*, 647 F.3d at 740.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on September 8, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT